W. C. VARNELL v. HENRY M. MILGROM, INC., A NORTH CAROLINA CORPORATION AND BILLY MORGAN

No. 857SC399

(Filed 17 December 1985)

1. Uniform Commercial Code § 8— sale of peanuts—Statute of Frauds applicable

The Statute of Frauds applied where the parties' alleged oral agreement for the sale of peanuts involved products with a value in excess of $500. N.C.G.S. 25-2-201(1).

2. Uniform Commercial Code § 8— contract for sale of peanuts—oral modification —Statute of Frauds applicable

Where plaintiff alleged that he entered into a written contract with defendant whereby defendant agreed to buy all of his "quota peanuts" for $640 per ton, and the parties then orally modified their contract so that defendant agreed to buy all of plaintiff's peanuts for $600 per ton, there was no merit to plaintiff's contention that defendant waived its right to assert the Statute of Frauds by operation of N.C.G.S. 25-2-209(4), since a mere promise is insufficient to effect a waiver of the Statute of Frauds; the consistent legislative policy is that business contracts must be in writing to be effective; references in N.C.G.S. 25-2-209(5) to "waiver affecting an executory portion of the contract" and to "performance" and "retraction" made it reasonable to conclude that "waiver" is employed with reference to the terms of the contract, not the Statute of Frauds; and plaintiff alleged no conduct on either party's part, other than a handshake, consistent with the alleged oral agreement to waive the Statute of Frauds or consistent with the terms of the agreement itself.

3. Attorneys at Law § 7— unfair trade practice—award of attorney fees—discretion of court

In an action to recover for unfair trade practices, it was within the court's discretion to award attorney fees to the prevailing party, and no abuse of discretion was shown in the trial court's denial of attorney fees in this action.

APPEAL by plaintiff and defendants from *Brown (Frank R.)*, *Judge*. Judgment entered 9 January 1985 in Superior Court,

EDGECOMBE County. Heard in the Court of Appeals 24 October 1985.

Plaintiff Varnell, a peanut farmer, entered into a written contract with defendant Henry M. Milgrom, Inc. (Milgrom) in 1981, whereby Milgrom agreed to purchase all Varnell's peanuts grown that year under the federal quota program ("quota peanuts"). The contract price was $640 per ton. According to Varnell, Milgrom thereafter, in October 1981, agreed through its agent, defendant Morgan, to purchase in addition to Varnell's quota peanuts all other peanuts produced by Varnell. The new price allegedly agreed upon for all peanuts was $600 per ton. Morgan and Milgrom thereafter refused to take delivery of any peanuts, and Varnell had to sell his peanuts elsewhere at prices substantially below $600 per ton.

In December 1981 Varnell filed this action, alleging that defendants' breach of the modified contract had caused him damages of $60,000. Plaintiff alleged that defendants' actions constituted unfair trade practices, entitling him to treble damages. Defendants denied any contract modification, pleading the Statute of Frauds. They also counterclaimed, alleging wrongful retention by Varnell of their peanut drying trailers. Milgrom tendered, and Varnell accepted, $16,000 as payment for Milgrom's failure to purchase the quota peanuts. In July 1982 partial summary judgment was granted for defendants on the claims based on the alleged oral modification of the contract. In an unpublished opinion plaintiff's appeal from that order was dismissed as interlocutory. 67 N.C. App. 358, 314 S.E. 2d 146 (1984).

On remand, the court heard the merits of the counterclaim and entered judgment for defendants. It reaffirmed the earlier partial summary judgment. The court denied defendants' motion for attorney fees. From judgment against him on the merits, plaintiff appeals; from the order denying attorney fees, defendants cross appeal.

*Aycock, Harper, Simmons & Woodard, by Edward B. Simmons, for plaintiff.*

*Parker and Parker, by Rom B. Parker, Jr., for defendants.*

Varnell v. Henry M. Milgrom, Inc.

EAGLES, Judge.

The Statute of Frauds, G.S. 25-2-201, provides that contracts for the sale of goods for the price of $500 or more are not enforceable unless evidenced by writing. The trial court expressly relied on G.S. 25-2-201 in denying plaintiff's claim based on the alleged oral modification. Plaintiff assigns error, arguing (1) the contract, an "output" contract, did not contain a price term and accordingly the statute did not apply and (2) defendants waived the statute by entering into the oral agreement.

I

Whether an output contract, *see* G.S. 25-2-306, is governed by G.S. 25-2-201 appears to be a new question in this State. Courts of other states which have considered the question have uniformly held that output contracts fall under the Statute of Frauds, without considering the $500 limit. *See Harris v. Hine*, 232 Ga. 183, 205 S.E. 2d 847 (1974) (all cotton produced on 825 acres); *Alaska Independent Fishermen's Marketing Association v. New England Fish Co.*, 15 Wash. App. 154, 548 P. 2d 348 (1976) (contract for fish catch); *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F. 2d 784 (5th Cir. 1975) (all acceptable cotton) (for limited purposes of Statute of Frauds, precision in quantity term immaterial).

[1]  The alleged agreement occurred in October, after the peanut growing season, when the quantity and quality of the peanut harvest was certain. In fact, 1981 was a record year: for Edgecombe County, average yield per acre was 3095 pounds (about 1.55 tons), valued at $560 per ton. North Carolina Crop and Livestock Reporting Service, North Carolina Agricultural Statistics 10, 19 (1983). Plaintiff admitted activity as a peanut grower for twenty years, selling peanuts to defendants for most of that time. The written contract specified "[a]ll acres" of quota peanuts. Plaintiff claimed some $60,000 in damages. Under these circumstances, and mindful of the "good faith" obligation for output contracts in G.S. 25-2-306(1), we must conclude that the subject matter of the alleged oral agreement had a value of more than $500 and that the Statute of Frauds should apply. G.S. 25-2-201(1), 25-2-209(3).

## II

The alleged agreement changed the price term of the original contract from $640 to $600 per ton, and the quantity term from "all quota peanuts" to "all peanuts," quota and otherwise. Although the damages claimed increased fourfold as a result, the record does not reveal whether the parties intended at the time of the alleged agreement to substitute a new contract for the original one or simply to modify it. No simple rule exists by which we can resolve this uncertainty. *See* 17 Am. Jur. 2d, Contracts, Section 459 (1964).

If the alleged oral agreement was a novation, then clearly the Statute of Frauds operates to bar evidence of it. "A novation is generally described as the substitution of a new contract for an existing valid contract by agreement of the parties." *Port City Electric Co. v. Housing, Inc.*, 23 N.C. App. 510, 512, 209 S.E. 2d 297, 299 (1974), *cert. denied*, 286 N.C. 413, 211 S.E. 2d 795 (1975). As a new contract, it must satisfy all the normal requisites of contractual validity including the Statute of Frauds. 58 Am. Jur. 2d, Novation, Sections 4-11 (1971); 66 C.J.S., Novation, Section 3 (1950); G.S. 25-2-201(1). Therefore, if the alleged oral agreement was a novation, the trial court properly granted partial summary judgment against plaintiff.

## III

[2] Plaintiff urges that the alleged agreement was not a novation but was a modification and that defendants waived their defense of the Statute of Frauds. He relies on G.S. 25-2-209:

(1) An agreement modifying a contract within this article needs no consideration to be binding.

. . .

(3) The requirements of the statute of frauds section of this article (Section 25-2-201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

Plaintiff contends that by entering into the alleged oral agreement, defendants waived their right to assert the Statute of

Frauds by operation of G.S. 25-2-209(4). This is also a question of first impression in North Carolina. Our pre-Code decisions offer no guidance, since no Statute of Frauds for the sale of goods existed in North Carolina after 1792. *See Odom v. Clark*, 146 N.C. 544, 60 S.E. 513, *aff'd*, 151 N.C. 735, 67 S.E. 1133 (mem.) (1908). We turn therefore to the decisions of other jurisdictions. G.S. 25-1-102(2)(c).

## A

Most jurisdictions have held that a mere promise, as here, is insufficient to effect a waiver of the Statute of Frauds. They require something more: additional consideration, *see Ryder Truck Lines, Inc. v. Scott*, 129 Ga. App. 871, 201 S.E. 2d 672 (1973); that the promisee materially change his position in reliance on the oral agreement, *see Edelstein v. Carole House Apartments, Inc.*, 220 Pa. Super. 298, 286 A. 2d 658 (1971) (no change where co-maker agreed to assume entire note); or conduct by the party asserting the Statute of Frauds which acknowledges the existence of the oral agreement, *see Dangerfield v. Markel*, 252 N.W. 2d 184 (N. Dak. 1977) (continued delivery with delayed payments after alleged agreement that payments would be delayed) and *Fire Supply & Service, Inc. v. Chico Hot Springs*, 196 Mont. 435, 639 P. 2d 1160 (1982) (acceptance of rents paid according to allegedly modified schedule). *But see Double-E Sportswear Corp. v. Girard Trust Bank*, 488 F. 2d 292 (3d Cir. 1973) (Code explicitly allows such oral waiver).

## B

We follow the majority rule, and hold that on the facts alleged defendants did not waive the Statute of Frauds. The consistent legislative policy that business contracts be in writing to be effective supports our result. *See for example* G.S. 22-1, 22-2, 22-4, 25-2-201, 25-8-319, 25A-28, 57-7, 66-99, 75-4, 94-6, 95-47.25. In addition, the references in G.S. 25-2-209(5) to "waiver affecting an executory portion of the contract" and to "performance" and "retraction" make it reasonable to conclude that "waiver" is employed with reference to the terms of the contract, not the Statute of Frauds. *See* 2 R. Anderson, Uniform Commercial Code Section 2-209:45 (3d ed. 1982); *Double-E Sportswear, supra*, 488 F. 2d at 298 (Garth, J., concurring). The comments indicate that the clear intent of G.S. 25-2-209(4) is to give legal effect to "the par-

ties' actual later conduct." *Id.*, Official Comment. The subsection "is directed primarily toward *conduct* after formation of the contract which will constitute a waiver. . . ." *Id.*, North Carolina Comment. (Emphasis in original.)

## C

"Conduct" involves more than a mere oral agreement. *See* Black's Law Dictionary 268 (5th ed. 1979); 2 R. Anderson, *supra*, Sections 2-209:36, 2-209:40; G.S. 25-2-208 and Official Comment. Plaintiff's pleadings alleged no conduct on either party's part, other than a handshake, consistent with the alleged oral agreement to waive the Statute of Frauds or consistent with the terms of the Agreement itself. Defendants breached the written contract by refusing to accept any peanuts *after* the date of the alleged oral agreement. Plaintiff did not plant additional peanuts in reliance on the alleged oral agreement, nor did he allege any other conduct tending to show reliance. When defendants refused to accept his peanuts, he properly sold them elsewhere. *See* G.S. 25-2-706. The question of the existence or non-existence of the alleged oral agreement is not affected by plaintiff availing himself of this remedy. We conclude that the facts alleged, taken in the light most favorable to plaintiff, demonstrate no conduct by defendants that would support plaintiff's claim of an oral waiver of the Statute of Frauds. Nowhere have defendants admitted the existence of the oral agreement. Therefore the Statute of Frauds applies, and partial summary judgment for defendants was proper. G.S. 25-2-201; *Lowe's Cos., Inc. v. Lipe*, 20 N.C. App. 106, 201 S.E. 2d 81 (1973); *Oakley v. Little*, 49 N.C. App. 650, 272 S.E. 2d 370 (1980).

## D

Plaintiff argues that this result is overly harsh, and that it will encourage false denials of otherwise valid oral agreements. Harsh results may occur under the Statute of Frauds, but the mandate of the General Assembly is clear. Were we to rule otherwise, we would encourage false assertions of subsequent oral agreements. That is precisely the result the Statute of Frauds is intended to prevent.

IV

[3]  Defendants assign error to the denial of their motion for attorney fees under G.S. 75-16.1:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, *in his discretion*, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as part of the Court costs and payable by the losing party, upon a finding by the presiding judge that: [various possible findings follow] (emphasis added).

Award of attorney fees under this section rests with the sound discretion of the trial judge. *Borders v. Newton*, 68 N.C. App. 768, 315 S.E. 2d 731 (1984). The judge's decision to deny attorney fees under the emphasized language is limited only by the abuse of discretion rule. *See Brandon v. Brandon*, 10 N.C. App. 457, 179 S.E. 2d 177 (1971) (under similar language of G.S. 50-13.6); *Callicutt v. Hawkins*, 11 N.C. App. 546, 181 S.E. 2d 725 (1971) (under G.S. 6-21.1). Defendants argue that the court erroneously denied their claim "as a matter of law." *See Brandon v. Brandon, supra* (error to deny fees on such grounds). We find nothing indicating that basis for the ruling: the order simply reads in relevant part that defendants' claim "is hereby denied." On this record, we must presume that the order was correctly made, that is, in the discretion of the court. *Ogburn v. Sterchi Bros. Stores, Inc.*, 218 N.C. 507, 11 S.E. 2d 460 (1940). The assignment is accordingly overruled.

CONCLUSION

No error is asserted in the judgment on defendants' counterclaim. Plaintiff has failed to show error on the merits, and the trial court was within its discretion on the attorney fees question. The judgment is therefore

Affirmed.

Judges WHICHARD and COZORT concur.